Case 1:21-cr-00662-PLF   Document

Case: 1:21-mj-00384
Assigned To : Faruqui, Zia M.
Assign. Date : 04/19/2021
Description: COMPLAINT W/ ARREST WARRANT

**STATEMENT OF FACTS**

Your Affiant, Gary France is a Special Agent with the Federal Bureau of Investigation ("FBI"). Currently, I am tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021. As an FBI Special Agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, detention, investigation, or prosecution of violations of Federal criminal laws.

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol and include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of

violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

### *Facts Specific to Willard Peart*

The Salt Lake City Division of the FBI was notified that Willard Jake Peart (hereinafter "PEART") entered the United States Capitol Building on January 6, 2021 and desired to meet with the FBI to discuss his conduct. PEART's attorney contacted the FBI to offer an interview regarding PEART's involvement in the riot and entry.

On January 20, 2021, PEART and his attorney met with the FBI. A recorded interview was conducted. During the interview, PEART advised that he traveled to Washington D.C. from Utah to attend the Trump rally. After the rally, PEART walked over to the U.S. Capitol Building. PEART claimed that he did not initially intend to go inside of the U.S. Capitol Building. Once PEART saw other rioters enter the U.S. Capitol Building, he decided to enter. PEART was in possession of his cellular telephone upon entering the building. However, PEART's cellular telephone died prior to his entry.

Prior to making his entry, PEART observed a rioter lift a 2x4 wooden board. PEART did not know what the rioter intended to do with the board. PEART did not participate in the destruction of the U.S. Capitol Building. Video footage confirmed that PEART did not participate in the destruction of the building. Additionally, PEART admitted to observing a bag positioned outside of the U.S. Capitol Building belonging to law enforcement. PEART observed that the bag contained two canisters of pepper spray. PEART did not remove the canisters from the bag and did not assault any member of law enforcement while inside/outside the U.S. Capitol Building.

PEART provided his cellular telephone to FBI to review the contents of his telephone. PEART's cellular telephone contained photographs of PEART while he was outside of the U.S. Capitol Building.



*Figure One*


*Figure Two*

     PEART confessed to entering the U.S. Capitol Building through the northwest entrance near the Senate chamber. According to PEART, upon entering, he roved around the first floor between the Senate Chamber and Statuary Hall. While roving, PEART joined other rioters in chanting and calling out politicians. PEART provided a detailed sequence of his actions and movements outside and within the U.S. Capitol but was unaware of the duration or timeline of events. PEART assisted Agents in documenting these actions and movements on maps and floorplans utilized during the interview.

     PEART's cellular telephone did not include any photographs of PEART inside of the U.S. Capitol Building. Through the use of FBI investigative techniques, agents determined that PEART's cellular telephone was powered off while he was inside of the U.S. Capitol building. In an effort to corroborate PEART's admissions, your affiant reviewed surveillance footage taken from cameras inside the U.S. Capitol Building. Surveillance footage corroborated PEART's admissions about his entry and conduct inside of the building. At approximately the 3:09 mark of the video surveillance, PEART is seen entering the building and standing near the Senate Wing Door. PEART removed his jacket and hat, eventually pulling out a red Trump flag and wrapping himself in the flag. A still photo of the video footage is below:



*Figure 3*

PEART proceeded to walk down a nearby hallway while chanting with other rioters. In *Figure 4*, PEART is seen possessing the Trump flag which he previously wrapped around himself upon making entry in the building.



*Figure 4*

PEART continued to walk down various hallways including the Hall of Columns while chanting in front of FBI Swat agents. After briefly speaking with the Capitol Police officers, PEART is escorted out of the building.

4



*Figure 5*



*Figure 6*



*Figure 7*

PEART posted the picture of himself (*Figure 1*) on his Facebook page. Your affiant reviewed the photograph, along with the video surveillance footage from the U.S. Capitol, and Utah DMV photograph of PEART. Based on this review and my in-person meeting with PEART, I believe that the individual depicted in *Figures 1-7* are PEART.

PEART admitted to knowingly entering the U.S. Capitol Building with the intent that his entry would impede or disrupt the orderly conduct of Government business or official functions. While inside, PEART's conduct was disorderly and disruptive due to the fact that PEART chanted loudly inside while parading and demonstrating inside of the building. At no time did PEART have permission to be inside of the U.S. Capitol Building.

Based on the foregoing, your Affiant submits that there is probable cause to believe that Willard Jake PEART violated 18 U.S.C. § 1752(a)(1) and (2), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; or attempts or conspires to do so.

For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Your affiant submits there is also probable cause to believe that Willard Jake PEART violated 40 U.S.C. §§ 5104(e), which make it a crime to willfully and knowingly (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; and (G) parade, demonstrate, or picket in any of the Capitol Buildings.

_____
Agent Gary W. France, Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 20th day of April, 2021.

_____
ZIA M. FARUQUI
U.S. MAGISTRATE JUDGE