**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | CR No. 21-cr-662-PLF |
| WILLARD JAKE PEART | * | |
| Defendant | * | |

\* \* \* \* \*

**<u>DEFENDANT WILLARD JAKE PEART'S SENTENCING STATEMENT</u>**

COMES NOW, the Defendant by counsel the Law Office of John S. Tatum, P. C. and requests the Court to impose a Sentence to Probation or Home Detention. In support of this request, Jake Peart[1] informs the Court as follows:

As much as we would wish we could do so, there is no profound bit of wisdom we can share that will salve the wounds to our national psyche occasioned by the events of January 6, 2021. Sadly, there is no sentence this Court may impose on Jake Peart (or any other January 6th Defendant) that will make all of this okay. The best that may be done is to fashion a sentence that is "sufficient, but not greater than necessary" to accomplish the purposes of 18 U.S.C. § 3553(a)(2). A sentence to Probation or Home Detention will meet the salutary goals of our sentencing statutes, and here's why:

**Factual and Procedural Background**

It is not necessary to recite the details of the riotous attack on the Capitol on the afternoon of January 6, 2021. The galling nature of the crime is seared into the memory

---

[1] Mr. Peart's full given name is Willard Jake Peart. He is known by all as "Jake Peart." For consistency throughout, we will utilize his middle name of Jake herein as well.

1

of all thinking Americans and will haunt us for decades.

Jake Peart's role in that riot is not in dispute. He traveled to Washington, D.C., with a few friends from Utah to attend the rally held by President Trump. The crowd moved toward the Capitol and Jake Peart and his friends followed along. When Mr. Peart neared the Capitol, he saw people entering the building and told his friends he was going to the Capitol. His friends wisely did not go with him. The fact that Mr. Peart went on alone indicates that he was not part of any organized, pre-meditated plan to breach the Capitol. He saw people going inside and acted upon emotion in the heat of the moment.

"At approximately 3:00 p.m., PEART entered the U.S. Capitol Building through the Senate Wing Door, near the Senate chamber. While inside, PEART walked around the hallways on the first floor of the building between the Senate Chamber and Statuary Hall carried a red flag with the words, 'TRUMP 2020.' PEART observed a nearby broken desk/table upon which he began to bang. PEART joined other rioters in chanting and calling out politicians, making statements such as 'Who's house? Our house!' and 'Where are the senators?' PEART also called out the name of U.S. Senator Mitt Romney (who represents Mr. Peart's home State of Utah)." Doc. #31, Statement of Offense, p. 3 of 5.

According to the Affidavit of FBI Agent Gary France, "PEART continued to walk down various hallways including the Hall of Columns while chanting in front of FBI Swat agents. After briefly speaking with the Capitol Police officers, PEART is escorted out of the building." See, Doc. #1-1 (21-mj-384), Affidavit for Complaint, filed 4/19/21, p.4,

summarizing the sequence of events and containing photographs of Mr. Peart at the scene, including:



Doc. #1-1, Affidavit, p. 4, Figure 4



Doc. #1-1, Affidavit, p. 5, Figure 5


Doc. #1-1, Affidavit, p. 5, Figure 6


Doc. #1-1, Affidavit, p. 6, Figure 7

So far as we know, all of Mr. Peart's actions in the Capitol were captured on video.  There is no evidence Mr. Peart fought with Officers, caused injury or damaged property.  On January 12, 2022 Jake Peart pled Guilty to *Parading, Demonstrating, or Picketing in a Capitol Building*, in violation of Title 40, United States Code, Section 5104(e)(2)(G), which offense accurately encapsules Mr. Peart's offense conduct.

**Immediate Acceptance of Responsibility**

On or about the afternoon of January 13, 2021 Defense Counsel and his wife were walking through our neighborhood in Aurora, Colorado when Counsel received a phone call from Jake Peart informing that he had participated in the January 6th breach of the Capitol. For reasons to be discussed in detail subsequently, Defense Counsel was shocked and disappointed at this news. Mr. Peart sought Counsel's assistance in surrendering himself to the authorities, explaining that he wished to be "accountable" for what he had done. Given that Mr. Peart resides in Utah, the offense occurred in Washington, D.C. and Defense Counsel practices law in Colorado, we explained that we would need to make some inquiries and determine an appropriate course of action which would take a few days. After various telephone conversations with Federal Authorities in Colorado and Utah[2], we were able to schedule an Interview between Mr. Peart and Agent Gary France of the St. George, Utah Office of the Federal Bureau of Investigation. Defense Counsel participated via video-teleconference facilities. That interview took place on January 20, 2021 – just 14 days after the offense. Therein Mr. Peart made a full and truthful confession of his actions at the Capitol. Mr. Peart also voluntarily surrendered his cell phone, provided passwords to his social media accounts and posed for a photograph of himself dressed in the same clothing worn on January 6th to aid Agents in locating him in the video footage gathered in the investigation. On April 22, 2021, Mr. Peart voluntarily surrendered in St. George, Utah and was released the

---

[2] Actually, our first call was to Counsel's Nephew, an FBI Agent then stationed in San Juan, Puerto Rico, who e-mailed colleagues in Denver and who in turn contacted Defense Counsel and put us in contact with FBI Agent Gary France in St. George, Utah.

same day under Personal Recognizance.  Doc. #32, Presentence Investigation Report (hereafter, PSIR), Release Status, p. 2.  Mr. Peart has subsequently complied with the conditions of release.  Doc. #32, PSIR, p. 5, para. 7.

**Sentencing Factors Under 18 U.S.C. § 3553(a)**

As the United States Sentencing Guidelines are inapplicable to this case, sentencing is governed by 18 U.S.C. § 3553(a). Some of the relevant factors this Court must consider include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). We will briefly review these factors.

**A. The Nature and Circumstances of the Offense**

It is patently obvious that Mr. Peart played a small part in an egregious assault on our Nation's Capitol and the Members of Congress there assembled to certify the 2020 Electoral Vote as mandated by our Constitution.  As has been said many times since, "you can't have a riot without rioters."  Accordingly, we will not embarrass ourselves or insult the Court's intelligence by pretending that Mr. Peart's conduct was inconsequential.  Though he wishes he could, Mr. Peart cannot take back his actions on January 6, 2021.  What he can do and what he has done since his first phone call to Defense Counsel some seven days after the riot is take responsibility for and be accountable for his part in the riot.

**B. The History and Characteristics of the Defendant**

Jake Peart is a good man, good husband and good father. He has no prior criminal history. The Offender Characteristics section of the PSIR provides a generally accurate picture of Mr. Peart's upbringing and family circumstances and we appreciate the effort of Senior US Probation Officer Malissa Aponte in that regard. Mr. Peart has been married to his wife Rachel since 1999 and they have five sons ranging in age from 9 – 21.


Peart Family Photo

The family resides in the small town of Toquerville, Utah where Mr. Peart runs a small real estate business assisted by his wife. The family is active in community affairs as indicated by Rachel's position as a City Councilperson. Mr. Peart is active in the Church of Jesus Crist of Latter-day Saints where he is a Counselor. PSIR, p. 11. Mrs. Peart describes her husband as "an amazing person who lives to serve others." He "faithfully visits the residents at the local elder-care home." As a father, he is,

"demanding and teaching by example through serving others." Doc. #32, PSIR, Para's. 52 – 53.

Probation Officer Aponte contacted family friend Monty Warr as a collateral contact, who reported that Mr. Peart is a "passionate, caring person" who "has been known to help people move into their homes" after assisting with a real estate transaction. Mr. Warr further stated that Mr. Peart, "loves his country and got caught up in the passion of the moment and entered the Capitol." Per Mr. Warr, "what happened at the Capitol should not shape Mr. Peart as a person." Doc. #32, PSIR, p. 12, para. 55.

Probation Officer Aponte noted in the PSIR, para. 54, that Defense Counsel had provided character letters in support of Mr. Peart. We attach the referenced Character Letters as Exhibits to this Sentencing Statement as follows[3]:

**Exhibit A, Keen Ellsworth, Family Friend and City Official**: Mr. Ellsworth informs in part:

> I met Mr. Peart about 10 years ago. He has a wonderful wife and some incredible sons. I have seen Mr. Peart interact with his family and our community. I have only seen positive and supportive behavior. He shows genuine concern for others, he quickly volunteers to help wherever needed, and he involves his family and others when serving our community and its citizens. I have seen only exemplary and ideal behavior, which leads me to the absolute and confident opinion that Mr. Peart is a model citizen.
>
> We need more people like Mr. Peart in our communities. He volunteers more of his time than the vast majority of people in our City. He wants to see our community safer and better for all. That desire is admired, and I am grateful he lives in Toquerville.

8

---

[3] The Character Letters attached hereto as Exhibits were previously tendered to the Probation Officer and Assistant US Attorney Brittany Reed, Esq. Upon inquiry, Counsel was instructed to tender the Letters as Exhibits to our sentencing papers which is what we have done.

**Exhibit B, Kevin Wilkinson, Friend and Business Associate**: Mr. Wilkinson attests to Mr. Peart's considerate and ethical approach to his business dealings and commitment to his country.

**Exhibit C, Heather Saunders, Business Associate and Friend**: Ms. Saunders attests to Mr. Peart's considerate and caring business dealings and the compassion he has shown for her family in difficult times.

**Exhibit D, April Gates, Business Associate and Friend**: Ms. Gates describes Mr. Peart as a "wonderful father, a caring husband, a dependable friend, and honest co-worker, a trusted church leader, a respected community leader and a valued friend."

**Exhibit E, Paul Heideman, Friend and Boy Scout Associate**: Mr. Heideman describes Mr. Peart as honest, hard working, polite, respectable and, "trying to do what is right."

**Exhibit F, Lynda and Lynn Williams, Friends, Neighbors and Church Members**: Mr. and Mrs. Williams attest to their high opinion of Mr. Peart due to his integrity, hard work and willingness to help neighbors and visit the elderly. They state, "He is a blessing to all who know him."

There can be no dispute but that Jake Peart is a good man who made a terrible decision on January 6, 2021. He became caught up in the excitement of the moment and followed the crowd. He has never engaged in criminal conduct in his adult life, prides himself on being a law abiding person who would not intentionally cause harm to others as such conduct would be contrary to his faith and belief system. He feels badly that he did not think about the harm his behavior caused to individuals in the Capitol and the perception of the Country at large.

Mr. Peart's character and contributions to his family and community during his entire adult life mitigates his offense conduct and militates heavily in favor of a probationary sentence.

## C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

We do not envy the Court in the exercise of its responsibility to impose a just sentence in this and presumably many other similarly situated cases.  Everybody has an opinion on what should happen to the January 6 Defendants.  Some believe every single one of them should go to prison for years.  Some believe that none should go to prison.  Those, of course, represent the fringe on either side of the issue. Counsel, as part of our responsibility to Mr. Peart, has endeavored to pay attention to at least some of the media coverage regarding the sentences of January 6th Defendants.  The Denver Post and local TV News Outlets have made it a practice to cover the proceedings of Colorado defendants.  Those similarly situated to Mr. Peart are typically covered in a small story in the middle of the paper or news story.  Those who were involved in the more atrocious behavior (invading the Speaker's Office, assaulting police officers, etc.) obviously receive prominent print and TV news coverage.  Similar coverage seems to have been the practice in Mr. Peart's home state of Utah.  We have not perceived that the general public (at least in our part of the country) has reacted adversely to probationary type sentences to those similarly situated to Mr. Peart.  Accordingly, we suggest that a probationary sentence for Mr. Peart – given his role in the offense - will not deprecate the seriousness of the offense nor engender disrespect for the law.

**D. The Need for the Sentence to Afford Adequate Deterrence**

With respect to the concept of general deterrence in a matter as grave as the January 6th riot, we are not competent to instruct the Court and will not attempt to do so. We can only state the obvious: The Government has seen fit to resolve a number of cases such as Mr. Peart's (entering the Capitol, in the heat of the moment, causing neither injury nor damage) with pleas to a Petty Offense and with recommendations of probation in a few early cases and home detention later on. In more serious cases the Government has recommended sentences of incarceration. That value judgment on the part of the Government reflects a common sense approach to a difficult situation given the large number of cases and the wide differences in the nature of the behavior of the various participants. A sentence consistent with that typically imposed upon a minor participant with no criminal history such as Probation or Home Detention is clearly appropriate under the circumstances present here.

With respect to the concept of specific deterrence to Mr. Peart, it is patently obvious that a term of incarceration is not necessary to achieve this sentencing purpose:

Mr. Peart has never before committed a crime in his adult life. He is unlikely to commit another. This particular offense was committed after he participated in a presidential rally hyped with emotion under the color of patriotism. As Mr. Peart candidly told Probation Officer Aponte,

> Singing the national anthem with all the people was very exciting. He started walking toward the Capitol with the crowd and wanted to go in too. He did not think it was a problem. Even when he called his wife, he was so excited. It was not until he got out and later heard the news reports that he knew it was a problem.

11

Doc. #32, PSIR, p. 9, para. 31. Actually, Mr. Peart knew he was in trouble as soon as he called his wife Rachel. As she told Probation Officer Aponte, PSIR, p. 12, para. 53,

> As to the instant offense, ***Mrs. Peart noted she was not happy about him being there*** (meaning the Capitol).

Emphasis supplied. Defense Counsel has spoken to Jake and Rachel Peart regarding her feelings about Mr. Peart's decision to enter the Capitol and she was much more than "not happy." Rather, she was furious and made that clear in the phone call with her husband while he was still in the vicinity.

Mr. Peart not only turned himself in to authorities early on, he has internalized the inherent moral wrongfulness of his conduct, as evidenced by his comments to Probation Officer Aponte (PSIR, p. 9):

> 33. In retrospect, Mr. Peart stated that he sees how scared those working at the Capitol must have been. He has learned to check his emotions, although still passionate of freedoms because they are important for society. He is now more open to other's perspectives and views.
>
> 34. Defense counsel suggested to Mr. Peart to watch the documentary *Four Hours at the Capitol.* Mr. Peart stated that Speaker Pelosi's intern's testimony had a profound effect on him. He did not realize that his euphoria, powerful feeling of patriotism, and enthusiasm of being in the Capitol, caused fear to others. That was not his intention. In the moment he did not realize that was having that effect on them.

Mr. Peart has not just shown remorse to the Probation Officer: As his wife Rachel informed Probation Officer Aponte, "turning himself in to the authorities, is who he is as a person, honest and forthcoming." Doc. #32, PSIR, p. 11, para. 53. Mr. Peart has discussed his wrongdoing with personal acquaintances:

**Exhibit A, Keen Ellsworth, City Official and Family Friend**:

Mr. Peart has been open and candid with me about the charges against him. I know Mr. Peart personally, and I know he will not engage in any similar

behavior again. Consequently it will be a waste of taxpayer money to do anything other than place him on probation. Even then, it is my opinion that a lengthy probation is unnecessary because he has learned from this experience.

**Exhibit B, Kevin Wilkinson, Friend and Business Associate**:

He did express multiple times he had remorse for getting caught up in the moment and entered into the capital that day.  I feel he has found that there are ways to make a difference and there are ways that we get in the way of making a difference.

He is a good man and it takes a big man to admit when he has made a mistake. I hope you have found that in him as I have.

A sentence to Probation or Home Detention will be sufficient to deter Mr. Peart from any further criminal conduct.

### E. The Need to Avoid Unwarranted Sentencing Disparities

We understand that the Government has routinely filed a Sentencing Chart as an Exhibit in these January 6 Defendant cases showing the sentences imposed as of the date of imposition of sentence in each case.  Defense Counsel has been able to obtain a copy of the Government's Sentencing Chart as of April 7, 2022 which was filed as Doc. #34-1 in Case No 21-cr-00627-BAH.  That copy is appended hereto as Exhibit G in aid of our comments with respect to the sentencing disparity factor.

In regard to the Government's Sentencing Chart, we think it relevant to note that as of April 7, 2022, of the approximately 109 persons who pled Guilty to only violation of 40 U.S.C. § 5104(e)(2)(G), some 78 of them were sentenced to Probation and/or Home Detention with various conditions such as community service, etc.  See, Exhibit G, Government Sentencing Chart, filed 4/7/22.  Given Mr. Peart's offense conduct, his early cooperation with the Government and complete acceptance of responsibility for

his misconduct, this sentencing factor clearly militates in favor of a Probationary or Home Detention Sentence.

**Do Unto Others**

Jake Peart, like nearly all of the January 6 Defendants, finds himself before the Court asking for leniency or mercy or grace for his offense conduct.  But, unlike the vast majority of such Defendants, Mr. Peart has previously found himself in the position of serious crime victim who when he had the opportunity to do so, actually showed leniency, mercy and grace to the Defendant.  So, Mr. Peart is not asking the Court to do something that he has not done himself.

In October, 2013 Mr. Peart's younger sisters, Krista and Kelsy then in their twenties, were walking along a street in Denver, Colorado when they were hit by a drunk driver.  Kelsy suffered serious and debilitating injuries.  Krista was killed instantly.  Undersigned Defense Counsel represented the drunk driver – a young woman also in her twenties – Andrea Milholm Jung.

Mr. Peart and his family recommended leniency for Ms. Milholm resulting in a prison sentence of only five years.  Beyond that, Mr. Peart and his family came to Denver for the Sentencing proceedings, and prior to that Hearing, the families of Mr. Peart and Ms. Milholm met and embraced in a scene of compassion and forgiveness unlike Counsel has witnessed in forty years of practicing law.  It was then and remains now the single most profound and meaningful moment of our professional career.

Ms. Milholm describes the encounter thusly:

> We were able to sit in a room before the hearing started where I received nothing but love, forgiveness, and understanding from the entire Peart Family. The most impactful comment that day was made by Jake Peart, "We want you to move on past this, Andrea and have a happy life."  It is unfathomable for a

> family to look at the person who killed their daughter and sister while driving drunk and wish her a happy life, yet Jake Peart and his family did.

Exhibit H, Andrea Milholm Jung, Letter, 1/27/21.  Ms. Milholm goes on to explain that Mr. Peart wrote letters of encouragement to her while she was in prison and wrote a letter advocating for her early acceptance into community corrections.  Ms. Milholm strongly condemns Mr. Peart's actions at the Capitol, but respects the man she knows from experience that he truly is. See, Exhibit H, Jung Letter.

As a direct result of Mr. Peart's forgiving nature, Ms. Milholm spent a relatively short term in prison, progressed to residential community corrections and then to parole. In the interim, Ms. Milholm has continued her education and been employed consistently with non-profit programs working with persons addicted to alcohol and drugs.  Some would argue that Ms. Milholm should have served more prison time; however, the societal benefit from Ms. Milholm's rehabilitation and resulting positive contributions likely far outweigh any benefit to be gained from further punishment.

Defense Counsel and Mr. Peart have since become friends which accounts for our earlier comment that we were "shocked and disappointed" to learn of Mr. Peart's involvement in the breach of the Capitol.  Nevertheless, we consider it an honor to know and represent Jake Peart.  He is a man of principle and conviction.  So, when Jake Peart says that he regrets his decision to enter the Capitol, that he is sorry his actions frightened persons inside the building and he will never involve himself in such conduct in the future, the Court may rely on that assurance and act accordingly.

WHEREFORE, Mr. Peart respectfully requests that the Court impose a Sentence of Probation or Home Detention with such terms and conditions as the Court deems fit in the premises.

Respectfully submitted this 21st day of April, 2022.

JOHN S. TATUM, P.C.


/s/ John S. Tatum
John S. Tatum, P. C.
12361 East Cornell Avenue
Aurora, Colorado  80014
Cell:  303-810-3952[4]
Telephone: (303) 750-6888
Facsimile: (303) 750-8279
Email: john@johntatumlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of April, 2022 a true and correct copy of the foregoing **DEFENDANT WILLARD JAKE PEART'S SENTENCING STATEMENT** was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to parties of record, including the following:

Brittany L. Reed, Esq.
Assistant United States Attorney
Brittany.Reed2@usdoj.gov

/s/ John Tatum

---

[4] Please utilize this Cell Number during COVID-19 Pandemic as our office is generally closed.