IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | CR No. 21-cr-662-PLF |
| WILLARD JAKE PEART | * | |
| Defendant | * | |

\* \* \* \* \*

**DEFENDANT WILLARD JAKE PEART'S RESPONSE TO
GOVERNMENT'S SENTENCING MEMORANDUM (ECF #34)**

COMES NOW, the Defendant by counsel the Law Office of John S. Tatum, P. C. and responds to the Government's Sentencing Memorandum (ECF #34) as follows:

Unless we are mistaken, the Government referenced in its Sentencing Memorandum three circumstances not previously discussed in the *Statement of Offense* (ECF #31), *Probable Cause Affidavit* of FBI Special Agent Gary W. France (ECF #1-1, 21-mj-00384-ZMF, filed 4/20/21) or *Nonguideline Misdemeanor Presentence Investigation Report* (ECF #35); to wit:

1. Comments by Mr. Peart during his January 20, 2021 video recorded interview with FBI Special Agent Gary France regarding Mr. Peart's home state of Utah Senator Mitt Romney (ECF #35, pp. 1, 15 & 19);

2. Comments by Mr. Peart during his January 20, 2021 video recorded interview with FBI Special Agent Gary France regarding Mr. Peart's urination on a wall near the Capitol (ECF #35, pp. 1 & 2); and,

3. Reference to the circumstances of the Defendant in *United States v. Robert Bauer*, Case No. 21-cr-049-TSC (ECF #34, pp. 24-25).

1

This Response is limited in scope to those three discrete circumstances.

**Comments Regarding Senator Mitt Romney**:

"I don't know what would have happened if I had seen Mitt Romney. It's probably a good thing that I didn't see him, because I would have been, who knows, I was definitely, um ya know, there. I've never had that much adrenaline run through my body ever, um so I don't know, …" and "I'm glad it ended the way it ended."

If the Court, or anybody else for that matter, ever questioned whether Jake Peart was honest with the FBI about his participation in the January 6, 2021 Capitol Riot, the preceding comment should have erased any such doubt.  At the end of the FBI interview conducted 14 days post incident conduct, Jake Peart, when asked a question to the effect of whether he had harmed anybody while at the Capitol, could have truthfully just answered, "no."  But, Jake Peart, unlike most of us when confronted, does not duck and cover.  Instead, he has this compelling need to tell the whole truth – no matter how badly it might make him look to others.  And, on January 20, 2021 he commendably did just that.

Had he not done so, the Government would have been deprived of its attention-grabbing introduction to the Sentencing Memorandum and no one (except Jake Peart and his God) would have ever known.  And for his candor, the Government does not commend him; rather, it asks for incarceration as punishment for telling the truth about his feelings in the heat of the moment.

At the same time, the Government glosses over Mr. Peart's concluding comment, "I'm glad it ended the way it ended" – with no violence on the part of Jake Peart toward Senator Romney or anybody else at the Capitol.  The record in the case is clear and

unambiguous:  At the time when he "never had that much adrenaline run through my body ever," Jake Peart did not assault or threaten any peace officer or anyone else, Jake Peart did not damage any property, and Jake Peart did not force his way past any active police line.  Further, Mr. Peart did not hang around the D.C. area looking for an opportunity to harm Senator Romney.  Rather, he went home to his family in Utah and instead of continuing to act on his emotions of January 6, 2021, within seven days of the incident, he was on the phone with his Lawyer seeking to turn himself in and be "accountable."  He subsequently did just that by providing a full, complete and truthful confession to FBI Agent France on January 20, 2021 – just 14 days after the offense conduct.  Mr. Peart is not a danger to anyone and a sentence of incarceration is not necessary to ensure that or any other sentencing goal is met.

**Urination Near Capitol**:

We are not sure where the Government is going with this reference.  To the extent that it may be implied that Mr. Peart urinated on the wall of a building as a form of protest, that is simply not true.  There were thousands of people in the area.  There were a limited number of porta-potties.  At some point, Mr. Peart felt an urgent need to urinate, and seeing no facility in proximity, he located some bushes next to a building, concealed himself as best he could and let nature take its course.  Other than clarifying that this was not part of a protest, we have no further comment.

**United States v. Robert Bauer (21-cr-049-TSC)**:

At pages 24 -25 of its Sentencing Memorandum, the Government likens the behavior of Mr. Peart to that of Rober Bauer who was sentenced to 45 days of incarceration.  While there are apparently some parallels to be drawn between the

conduct of the two men, the Government notes that Mr. Bauer had an "extensive adult criminal history" a factor which "was considered" by the Court in sentencing. While we are not privy to Mr. Bauer's criminal history, it is apparent from the Government's use of the adjective "extensive", that either Mr. Bauer has previously committed some serious crimes or that lesser restrictive forms of punishment and/or deterrence have not been effective in modifying his behavior – hence, incarceration was deemed necessary. There is no such correlation with Mr. Peart. As the Presentence Investigation Report (ECF #35) and Exhibits A – F & H to Mr. Peart's sentencing statement (ECF #33) indisputably demonstrate, not only does Mr. Peart have no adult criminal history, he is a responsible family man, a hard-working business person, and a valued asset to his community and church.

An arguably better correlation may be made to the circumstances of a case previously before this Court in *United States v. Valerie Ehrke*, Case No. 1:21-cr-00097-PLF, wherein Ms. Ehrke was sentenced to Probation. According to the Government's Sentencing Memorandum in the Ehrke case, Ms. Ehrke traveled to Washington, D.C., to attend the Trump rally and thereafter returned to her hotel room where upon seeing the events on television, wanted to be a part of the crowd and returned to the scene. Ms. Ehrke posted videos of events as she neared the Capitol, noting that she was, "on the way to the breached capitol building." (21-cr-00097, ECF #20, p.2). Ms. Ehrke entered the North Door and made it approximately fifteen feet into the building before the police pushed the crowd back outside "through the door, including the defendant . . . ." (id., p.3). Although Ms. Ehrke was only in the Capitol for a minute or so, that was apparently not because she left volitionally, but because she was physically ejected. Unlike Mr.

Peart who acted in the heat of the moment while at the scene, Ms. Ehrke had left the area, had time to think about her actions, yet, still returned to the area – all the while posting to social media.  Like Ms. Ehrke, Mr. Peart posted one image of himself after exiting the Capitol; but unlike her, Mr. Peart did not label his post with a "flaming 'Q' which is commonly associated with QAnon, a far-right conspiracy group." (id., p. 3).

Ms. Ehrke voluntarily interviewed with the FBI on January 12, 2021 - only eight days prior to Mr. Peart doing so - (id., p. 4) and was one of the first to plead guilty which occurred on June 30, 2021.  By way of an e-mail dated June 16, 2021 to AUSA Brittany Reed, Mr. Peart offered to plead Guilty to a Misdemeanor offense and counsel informally had similar discussions even prior to that time.

**Conclusion**:

Since filing our Sentencing Statement and having the opportunity to review the Government's Sentencing Statement, the Probation Department filed and Mr. Peart has had the opportunity to review the final *Nonguideline Misdemeanor Presentence Investigation Report* (ECF #35) and *Sentencing Recommendation* (ECF #36).  At page 2 of ECF #36, the Probation Office recommends 36 months of probation with the special conditions of home detention through location monitoring, payment of restitution, community service and financial information disclosure.  Mr. Peart concurs with the recommendation of the Probation Department and is prepared to comply fully with any conditions imposed by the Court.

WHEREFORE, Mr. Peart respectfully responds to the Government's Sentencing Memorandum and reiterates our request that the Court impose a Sentence of Probation

or Home Detention with such terms and conditions as the Court deems fit in the premises.

Respectfully submitted this 27th day of April, 2022.

           JOHN S. TATUM, P.C.

           /s/ John S. Tatum
           John S. Tatum, P. C.
           12361 East Cornell Avenue
           Aurora, Colorado  80014
           Cell:  303-810-3952[1]
           Telephone: (303) 750-6888
           Facsimile: (303) 750-8279
           Email: john@johntatumlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of April, 2022 a true and correct copy of the foregoing **DEFENDANT  WILLARD JAKE PEART'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM (ECF #34)** was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to parties of record, including the following:

Brittany L. Reed, Esq.
Assistant United States Attorney
Brittany.Reed2@usdoj.gov

           /s/ John Tatum

---

[1] Please utilize this Cell Number during COVID-19 Pandemic as our office is generally closed.